IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y    DF
★ APR 19 2006 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RESIDENTIAL SERVICES VALIDATED
PUBLICATIONS,

                          Plaintiff,           04-CV-4556 (TCP) (ARL)

    -against-                      **MEMORANDUM,**
                                              **OPINION and ORDER**

BARRY R. CARUS and MICHAEL C.
MANNIELLO, CARUS & MANNIELLO
P.C. and STACY R. CARUS,

                         Defendants.
-----------------------------------------------------------X
PLATT, District Judge.

        Plaintiff Residential Services Validated Publications ("RSVP" or "the Company") moves pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for partial summary judgment on its breach of contract and account stated claims against Defendant Carus and Manniello, P.C. ("C&M" or "the Firm"). RSVP also moves for dismissal of Defendants' affirmative defense and counterclaim of fraud, as well as their affirmative defenses of estoppel and lack of personal jurisdiction. For the following reasons, Plaintiff's motion to eliminate Defendants' counterclaim and affirmative defenses is hereby **GRANTED**. Plaintiff's motion for partial summary judgment on the account stated and breach of contract claims is also hereby **GRANTED**.

# BACKGROUND

## A. The Parties

Defendant C&M is a New York based law firm which contracted the services of Plaintiff RSVP, a legal publishing company specializing in real estate postings and foreclosure notice publications. (Compl. ¶ 18.) Defendants Barry R. Carus ("Carus") and Michael C. Manniello ("Manniello") are the officers and directors of C&M. (Compl. ¶ 17.) Stacy A. Carus ("Ms. Carus"), the wife of Barry Carus, is also named as a Defendant because Plaintiff alleges that the Firm improperly diverted funds to her. (Compl. ¶ 36.) Plaintiff brings its claims for summary judgment against the Firm only and not against the individual Defendants. (Compl. ¶¶ 38, 50; Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 1.)

## B. RSVP's Relationship with C&M

Beginning in early 2001, C&M contracted RSVP's services on a "case-by-case/job-by-job basis to perform legal postings and publishing required in certain mortgage foreclosure actions being prosecuted by C&M." (Affidavit of Barry R. Carus in Opp. Pl.'s Mot. Summ. J. ("Carus Aff.") ¶ 2.) The parties reached an agreement over e-mail correspondence wherein RSVP would base its price on the amount the publications charged it plus an agreed upon fee (hereinafter the "cost plus fee arrangement"). (Carus Aff., Ex. B.; Pl.'s Reply Mem. at 3.) While the details of the agreement changed a number of times, the

general cost plus fee arrangement remained the same. The parties transacted business on this basis for a number of years.

In September 2003, RSVP and C&M entered into a written and executed Services Agreement (the "Agreement") which integrated their prior discussions by use of a merger clause. (Carus Aff. ¶ 6; Services Agreement, Wilinsky Aff., Ex. M.) The Agreement contained the following provisions:

2. COMPENSATION, ADVANCES AND ACCOUNTING . . .

> (b) Firm shall be responsible for invoicing and collecting from Clients all amounts that are due Firm, including amounts that arose as a result of Services provided by RSVP
>
> (c) Firm is obligated to pay RSVP for all Services provided and payment for such Services shall become due upon the earlier of:
> 1. Thirty days after the Firm's receipt of payment on each file from its Clients.
> 2. Upon the expiration of 150 days from the completion of Services.

(Services Agreement, Wilinsky Decl., Ex. M.)

Defendant Carus stated under oath that in accordance with the above agreement, when C&M received a bill, he would pass the amount along to the client. (Carus Deposition, Willinsky Reply Decl. at 110.)

At the time the parties entered into the Services Agreement, C&M had accumulated a debt to RSVP of $360,000.00. (Carus Aff. ¶ 7.) The parties met to devise a debt reduction plan, under which C&M agreed to pay RSVP $10,000 per month in addition to its regular payments beginning in the fall of 2003.

(Carus Aff., Ex. F.)

On or about March of 2004, C&M ceased making its debt-reduction payments. (Carus Aff. ¶ 10.) In September of 2004, C&M ceased utilizing the services of RSVP and soon thereafter retained an alternative legal publishing company, Ashley Advertising Publishing Corp ("Ashley"). (Carus Aff. ¶¶ 11, 13.) The parties agree that as of May 2005 the debt was at a balance of $200,985.59 according to RSVP's records. (Carus Aff. ¶ 9; Pl.'s 56.1 Statement ¶ 7.)

Defendant Carus alleges that upon comparing Ashley's and RSVP's invoices, he found Ashley's prices for the same services (the same notices published in the same newspapers for the same case) to be substantially lower. (Carus Aff. ¶ 14.) C&M submitted invoices from RSVP and Ashley Advertising to support this claim. (Carus Aff., Ex. J.) However, RSVP points out that C&M failed to include its contract with Ashley, making it impossible to accurately compare the amounts RSVP and Ashley charged C&M. (Hints Reply Decl. ¶ 4) Despite this omission, Defendants bring a counterclaim against RSVP for fraudulent overbilling.

## C. Defendants' Admissions

Since the inception of this litigation, Defendants have repeatedly acknowledged that C&M owes a debt to RSVP. In Carus's and Maniello's reply brief on their Motion for Rule 11 sanctions (submitted prior to C&M's entry as

Defendant) Defendants stated, "it is our position that the debt owed to RSVP is an obligation of the Carus Firm." (Pl.'s 56.1 Statement ¶ 3.)

During oral argument on April 1, 2005, Defendants' attorney Lee S. Shalov made the following admission:

| | |
|---|---|
| The Court: | What does the law firm say with respect to that debt? |
| Mr. Shalov: | That it absolutely owes the debt, Judge |
| The Court: | They owe it? |
| Mr. Shalov: | The law firm owes the debt. There is no question. |
| The Court: | Why don't they pay it? |
| Mr. Shalov: | They are trying to pay it, Judge. But - - |
| The Court: | Pay it. |

(Transcript of Oral Argument, April 1, 2005, 04-CV-4556 ("Tr."), Wilinsky Decl., Ex. I at 8.)

On April 19, 2005, Defendant Carus acknowledged under oath that the Firm had never objected to an invoice from RSVP and that the Firm's records showed a debt of $200,985.59 "as a balance due and owing to RSVP." However, Carus later testified that C&M was "now of the opinion that perhaps RSVP has been overbilling us . . ." (Carus Deposition, Wilinsky Decl., Ex. J. at 154-56.)

In response to Plaintiff's First Request for Production of Documents, Carus submitted a print-out from the Firm's general ledger, which stated that the Firm owed RSVP $206,420.29. (Wilinsky Decl. ¶ 6.)

Lastly, in an affidavit submitted in opposition to Plaintiff's Motion for Summary Judgment, Carus acknowledges that "[c]urrently, as of May 4, 2005, the outstanding account balance is approximately $200,985.59, according to

plaintiff's records." (Carus Aff. ¶ 9.)

D. **Procedural History**

On October 22, 2004, RSVP brought a Complaint in this Court against Carus and Manniello individually, but not against C&M, for recovery of an outstanding debt. (Pl.'s Mem. at 1.) In response, Defendants filed a Motion to Dismiss and a Motion for Sanctions pursuant to Rule 11, Fed. R. Civ. P, on the grounds that RSVP failed to sue the proper Defendant, C&M. During oral argument in April 2005, (i) the parties agreed to add C&M as a Defendant, and (ii) the Court denied Defendants' Motion to Dismiss and Motion for Sanctions. (Memorandum and Order, 04-4556, April 18, 2006, Wilinsky Decl., Ex. H.)

On April 29, 2005, Plaintiff filed an Amended Complaint which added C&M as a Defendant and requested recovery of the outstanding debt. Plaintiff asserted eight causes of action against Defendants, including claims for breach of contract and account stated. On May 13, 2005, Defendants Carus and C&M submitted an Answer to the Amended Complaint asserting an affirmative defense and counterclaim for systematic overcharging on its invoices (Carus Answer ¶¶ 44-58), as well as affirmative defenses of estoppel, statute of frauds, and lack of personal jurisdiction. (Carus Answer ¶¶ 59-79.) Ms. Carus also asserted affirmative defenses of estoppel and statute of frauds. (Stacy Carus Answer ¶ 87.) Defendant Manniello did not raise any affirmative defenses relevant to Plantiff's motion.[1]

---

[1] For the sake of simplicity, we use the general term "Defendants" when referring to the parties that

On October 17, 2005, Plaintiff filed its Motion for Partial Summary Judgment on the breach of contract and account stated claims against C&M and requested this Court eliminate the counterclaim for fraud and the affirmative defenses of estoppel and lack of personal jurisdiction. Defendants filed their opposition the same day.

## DISCUSSION

### A. Summary Judgment Standard

Courts may grant summary judgment when the moving party demonstrates that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). On motions for summary judgment, courts must construe all facts and draw all inferences in favor of the non-moving party. *See Howley v. Town of Stratford*, 217 F.3d 141, 150-51 (2d Cir. 2000).

Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Factual issues are genuine if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*; *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To survive a motion for summary judgment, the non-moving party

---

raised affirmative defenses.

"must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Furthermore, facts missing from the affidavit of a party opposing a motion for summary judgment will not be presumed. *See Lujan v. National Wildlife Foundation*, 497 U.S. 871, 888-89 (1990).

### B. Plaintiff's Claim for Account Stated

Under both Federal and New York State law, an account stated is "an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and the balance due, if any, in favor of one party or the other." *Kramer Levin Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 719 (S.D.N.Y. 1986) (citing *Chisholm-Ryder Co., Inc. v. Sommer & Sommer*, 70 A.D.2d 429, 431 (4th Dep't 1979)) [hereinafter *Kramer Levin*]. An action for account stated is proper where the debtor party received all invoices for payment and failed to object to them within a reasonable time. "It is incumbent upon the party in receipt of an account 'to examine the statement and make all necessary objections' because 'an agreement to pay an indebtedness may be implied if a party receiving a

8

statement of account keeps it without objecting to it within a reasonable amount of time. . .'" *FTI Consulting, Inc. v. Rossi*, 2004 WL 359378, *3 (S.D.N.Y. Feb. 25, 2004) (quoting *Kramer Levin*, 638 F. Supp. at 719). In *Greenspan & Greenspan v. Wegner*, 294 A.D. 2d 539 (2d Dep't 2002), for instance, the Court granted plaintiff's motion for summary judgment on an account stated claim where the defendant admitted receiving plaintiff's bills and offered no documentation to support his claim that he objected to certain invoices. *Id.* at 539.

Here, unrebutted documentary proof demonstrates that RSVP regularly billed C&M pursuant to the parties' agreement. (RSVP invoices, Carus Aff., Ex. J.) As in *Kramer Levin*, C&M voiced no objection to the invoices as they were received and has even acknowledged the existence of the outstanding debt on numerous occasions. *See supra*, pp. 4-5; *see also* (Carus Deposition, Wilinsky Decl., Ex. J. at 156-57). Defendant only belatedly objected to the invoices when Plaintiff commenced this lawsuit, years after the bills were initially sent. *See Kramer Levin*, 638 F. Supp. at 720 ("where almost three years passed before [defendant] questioned the billing, such a period of silence-- in which there was ample opportunity to object to the billing--amounts to an implied acquiescence to the stated account.")

Furthermore, Federal Courts within this Circuit and New York State Courts have held that "[a]n agreement to pay an indebtedness may also be implied if the debtor makes partial payment. The partial payment is considered acknowledgment of the validity of the account." *Kramer Levin*, 638 F. Supp. at

720 (citing *Parker Chapin Flattau & Kampel v. Daeleen Corp.*, 59 A.D.2d 375, 378 (1st Dep't 1977). In *Kramer Levin*, the Court granted summary judgment on plaintiff's account stated claim in part because defendant made just two partial payments against his outstanding debt. *Id.* Here, C&M admits to making weekly payments for at least half a year. (Carus Aff. ¶¶ 7-8; Carus Aff., Ex. F.) This clearly constitutes partial payment and shows that C&M acknowledged the validity of the debt. As Defendants failed to object to the RSVP's bills as they came due and made partial payment against the debt, Plaintiff has established its claim for account stated.[2] *See Kramer Levin*, 638 F. Supp. at 720 ("Because [Defendant] has both acquiesced in the bills sent to him, and made partial payment against the outstanding balance, plaintiff has established its account stated claim.")

C&M does not directly refute Plaintiff's cause of action for account stated. Instead, the Firm relies on its counterclaim for fraudulent overbilling to raise a material issue of fact. This counterclaim shall be discussed in part D below.

---

[2] In their Answers, Defendants raised the defense of statute of frauds, but fail to discuss it in their opposition papers. To the extent Defendants have not waived this defense, the Court finds it invalid against the claim for account stated. Courts interpreting New York law have held that "a written statement of account rendered to the defendant is sufficient to preclude any defense to an account stated based on the statute of frauds." *See Kramer Levin*, 638 F. Supp. at 722 (citing *Milstein v. Montefiore Club of Buffalo, Inc.* 47 A.D.2d at 805-06. Here, we have numerous invoices demonstrating the existence of a debt. (Carus Aff., Exs. G, J.) Thus, the statute of frauds defense is inapplicable.

### C. Plaintiff's Claim for Breach of Contract

Plaintiff also moves for summary judgment on its claim for breach of contract. Under New York law, in order for a plaintiff to establish a breach of contract claim, he must prove "the (1) existence of a contract, (2) performance by plaintiff, (3) breach of the contract by defendant and (4) damages resulting from the breach." *Eastside Food Plaza, Inc. v. ""R"" Best Produce, Inc.* 2003 WL 21727788, *4 (S.D.N.Y. July 23, 2003) (citing *Terwiliger v. Terwiliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)

Here, the contract in question is the written Services Agreement executed by both parties in September 2003. In Carus's and Manniello's brief for Rule 11 sanctions, they admitted that "[t]here is a clear and express contract that governs Plaintiff's services; that contract is between Plaintiff and the law firm of Carus & Manniello." (*See* Services Agreement, Willinsky Decl., Ex. M; Pl.'s 56.1 Statement ¶ 3.) Thus, Defendants admit the first prong of the test. Defendants also admit that Plaintiff performed under the contract by submitting legal postings to various publications for the benefit of C&M. (Carus Deposition, Wilinsky Decl., Ex. J at 153-58.) As for the third prong, it is without doubt that C&M breached the terms of the contract. Article 2(c) of the Services Agreement obligates C&M to "pay RSVP for all Services provided and payment for such Services shall become due upon the earlier of: 1. Thirty days after the Firm's receipt of payment on each file from its Clients. [or] 2. Upon the expiration of 150 days from the completion of Services." (*See* Services Agreement, Willinsky Decl., Ex. M.)

RSVP stopped providing services to C&M in September of 2004. (Carus Aff. ¶ 11.) Far more than 150 days have passed since that time and C&M had still not paid the outstanding debt. Lastly, C&M and Carus have essentially admitted the existence of a debt. *See supra* pp. 4-5. The debt clearly satisfies the damages prong of the above test. Accordingly, Plaintiff is entitled to Summary Judgment on its claim for breach of contract.[3]

### D. Defendants' Affirmative Defenses and Counterclaim

Defendants appear to dispute Plaintiff's Motion for Summary Judgment on the breach of contract claim by arguing that RSVP fraudulently overbilled the Firm, and thus there is a factual dispute as to the amount of damages. C&M also argues that Plaintiff is not entitled to Summary Judgment on the account stated claim because RSVP committed fraud. *See FTI Consulting, Inc.*, 2004 WL 359378, at *3 (holding that a claim for account may be impeached where fraud, mistake or other equitable considerations can be shown); *Samson v. Freedman*, 102 N.Y. 699 (1886) (same). Lastly, Defendants raise the defense of estoppel in their Answers, which Plaintiff seeks to dismiss. Defendants' arguments and defenses are without merit.

---

[3] As noted above, Defendants raised the affirmative Defense of Statute of Frauds in their Answer but not in their opposition. To the extent Defendants' have not waived this defense, this Court finds the Statute of Frauds satisfied by the Services Agreement, which was (i) in writing, (ii) signed by Carus of C&M, the party to be charged, and (iii) contained a merger clause integrating all prior agreements between the parties. (Services Agreement, Wilinsky Decl., Ex. M.)

### 1. *Fraudulent Overbilling*

Throughout the parties' dealings, RSVP billed C&M on a cost plus fee basis, where the cost was the amount the publications charged RSVP to post the notices. *See supra* p. 2. Defendants state that after its dealings with RSVP ended, the Firm contracted with Ashley Advertising and found that it charged less than RSVP for the same services. (Carus Aff. ¶ 14.) Defendants conclude that the pricing discrepancy proves that RSVP misrepresented the prices the publishers charged the Company. (Defs.' Mem. Opp. at 5-7.) However, C&M did not submit the contract with Ashley Advertising, and thus, this Court does not know the fee arrangement between Ashley Advertising and C&M. In fact, Defendants have not even averred that its contract with Ashley was executed on a cost plus fee basis. (Reply Decl. ¶ 4 Ralph Hints (stating that Carus did not explain the terms of the Firm's relationship with Ashley, and thus it is unknown why Ashley's prices to the Firm were lower.)) *see also Ruschner v. Richelieu America, Ltd.*, 2005 WL 2172314, *4 (W.D. Wash. Sep. 6, 2005) (citing *Lujan*, 497 U.S. at 888-89 (holding that facts missing from the nonmovant's affidavits in opposition to summary judgment will not be presumed)). Essentially, Defendants ask this Court to compare apples to oranges and uphold its counterclaim; a task we choose not to undertake.

Furthermore, Defendants have failed to prove damages, a key element of a fraud claim. "To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2)

13

the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995). Numerous Courts within this circuit have dismissed fraud claims because the victim suffered no damages as a result of the alleged fraud. *See e.g. Canpartners Investments IV, LLC v. Alliance Gaming Corp.*, 981 F. Supp. 820, 825 (S.D.N.Y. 1997). By the terms of the Services Agreement, C&M was contractually obligated to bill their clients for RSVP's charges. (*See* Wilinisky Decl., Ex. M, Services Agreement 2(c). Carus also admitted under oath that after the law Firm received the bill from RSVP, it would pass the amount along to the client. (Carus Deposition, Wilinisky Reply Decl. Ex. at 110.) As Defendants have failed to offer any evidence that they paid RSVP directly (which would be a violation of the contract), we find that RSVP has not satisfied the damages element of its fraud counterclaim. *See In re Jay*, 432 F.3d 323, 326 (5th Cir. 2005) ("When parties enter into a contract the law presumes they intend the consequences of its performance.")

Furthermore, the chronology of this case calls into question whether Defendants actually believe their counterclaim has any validity. The invoices from Ashley Advertising were sent to C&M beginning in early 2004. Yet in April 2005, Carus's attorney, Lee Shalov, admitted to this Court that the law firm owed RSVP a $200,000 debt and Carus himself acknowledged the existence of the outstanding balance in an April 2005 deposition. (Tr., Wilinsky Decl., Ex. I

at 8, Ex. J at 154-56.) One wonders why Defendant did not discuss the "fraudulent" bills submitted by RSVP with his own attorney, or take note of them himself, between spring 2004 and April 2005.[4]

This Court found in *Stambler v. Diebold, Inc.*, 1988 WL 95479, *2 (E.D.N.Y. Sept. 2, 1988) *affirmed* 878 F.2d 1445 (2d Cir. 1989) that:

> [t]he litigant opposing summary judgment may not rest on conclusory allegations or denials as the vehicle for obtaining a trial. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Rather, he must bring to the district court's attention some affirmative indication that his version of the relevant facts is not fanciful. *Id.*

Here, the only substantive evidence Defendants offer for their version of events are Carus's own self-serving affidavits and the invoices from the two legal publishing companies, which it has been shown, do not offer any indication that C&M's version of events is accurate.

In essence, Defendants request that this Court relieve them of their contractual obligation because they made a bad bargain with RSVP. There is no legal basis to support such request. As the court held in *Technology Exp., Inc. v.*

---

[4] Defendants cite a legal encyclopedia and its supporting case law for the proposition that an attorney cannot bind his client by any act which amounts to a surrender or waiver of any substantial right of the client. *See* N.Y. Jur. 2d Attorney-Client Relationship § 100. Yet neither N.Y. Jurisprudence, nor the cases it cites, supports the claim that an attorney's admission of a client's debt necessarily constitutes waiver of a "substantial right". Furthermore, Defendants have not submitted any evidence to show that Mr. Shalov lacked authority for his assertion that the debt is owed by C&M.

*FTF Business Systems Corp.*, there "may well have been a very bad bargain, but the Court may not relieve sophisticated commercial entities of their bad bargains." 2000 WL 222628, *2 (S.D.N.Y., Feb. 25, 2000). With annual revenues of $2.5 million, it is clear that C&M was a sophisticated commercial entity. (Tr., Wilinsky Decl., Ex. I at 4.) As such, the Firm should have researched the legal publishing market before entering into an agreement with RSVP. Indeed, the firm had ample opportunity to alter the terms of the contract during the parties' course of dealing, as the agreement was renegotiated several times. Defendants may not now avoid their contractual responsibility by filing a frivolous counterclaim.

The lack of evidentiary support for Defendants' allegation, coupled with their failure to show damages and their repeated admissions that C&M owes the debt makes clear that their counterclaim for fraudulent overbilling is without merit and accordingly, the same is hereby dismissed.

2. *Estoppel*

Defendants Carus, Stacy Carus and C&M also raise estoppel as an affirmative defense. (Carus Answer ¶¶ 59-74; Stacy Carus Answer ¶ 87.) Although Defendants' argument is convoluted, they appear to claim that the parties had an agreement allowing C&M to cease paying down its debt once it was reduced to the target amount of $300,000. (Carus Answer ¶¶ 62-69.) Defendants apparently contend that Plaintiff is estopped from demanding payment on a debt less than this amount. This argument fails for a number of reasons.

First, under the Services Agreement, C&M was "obligated to pay

RSVP for all Services provided . . ." The parties also agreed therein that "[u]pon termination of this Agreement, RSVP shall remain entitled to and Firm shall remain obligated to pay RSVP for any unpaid and outstanding Services invoiced, and unbilled Services performed." (Services Agreement, Wilinsky Decl., Ex. M.) It is black letter law that "[w]here the parties have reduced an agreement to an integrated writing, the parol evidence rule bars all evidence of prior or contemporaneous negotiations or agreements offered to modify or contradict the provisions of the writing." *Point Developers, Inc. v. Fed. Deposit Ins. Corp.*, 921 F. Supp. 1014, 1019 (E.D.N.Y. 1996) (Spatt, J.) Defendants' purported agreement was made contemporaneous with the Services Agreement and allowed C&M to cease making its payments. Thus, the agreement modified the express terms of the written and integrated Services Agreement, which required payment for all of RSVP's services. Under the parol evidence rule, Defendants may not submit evidence of such agreement, and thus, it cannot be used to support their estoppel defense.

Even if the parol evidence rule was not a bar, Defendants have offered no evidence in support of the unlikely agreement. E-mails between the companies indicate that the Firm was to pay $10,000 a month in addition to their normal payments, and that a target of $300,000 was not specified. (Carus Aff., Ex. F.); *see also Virgin Atlantic Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 262 (2d. Cir. 2001) (finding that party opposing summary judgment must allege "specific facts" to overcome the motion).

17

Lastly, Defendants fail to establish a claim for estoppel under New York law. The party claiming the benefit of an equitable estoppel must establish three elements:

> (1) lack of knowledge . . . as to the facts in question;
> (2) reliance upon the conduct of the party estopped; and
> (3) action based thereon of such a character as to change his position prejudicially.

*Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 500 (citing *Brelsford v. USAA*, 289 A.D.2d 847, 849 (3rd Dep't 2001)).

Defendants are the party claiming the benefit of estoppel. Defendants have not shown (i) how they relied on Plaintiff's forgiveness of their debt, or (ii) how they changed their position prejudicially based on the Agreement. Accordingly, Defendants affirmative defense of estoppel is dismissed.[5]

---

[5] Other affirmative defenses listed in the Defendants' Answers are moot or irrelevant to this decision. Defendant Carus's affirmative defense of lack of personal jurisdiction was dismissed by the Court's Memorandum and Order of April 18, 2005. Defendants' affirmative defense of Statute of Frauds is irrelevant against Plaintiff's claims for the reasons stated in footnotes three (3) and four (4).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to eliminate Defendants' counterclaim for fraud and their affirmative defenses of estoppel and lack of personal jurisdiction is hereby **GRANTED**. Plaintiff's motion for Partial Summary Judgment is also hereby **GRANTED**.

**SO ORDERED.**

Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
April 14, 2006